**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

SYDNIE RAE C.,

                                        Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 6:20-CV-1385
                                                    (CFH)

                                        Defendant.

─────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Law Offices of Steven R. Dolson        STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration         RONALD W. MAKAWA, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

    Sydnie Rae C.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for social security income benefits.  See Dkt.

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of

benefits.  <u>See</u> Dkt. No. 15.  The Commissioner cross moves for judgment on the

pleadings.  <u>See</u> Dkt. No. 17.  For the following reasons, the Commissioner's decision is

affirmed.

## I. Background

On April 1, 2016, plaintiff filed a Title XVI application for social security income

benefits.  <u>See</u> T. at 261-64.[3]  Plaintiff alleged a disability onset date of April 29, 2005.

<u>See id.</u> at 261.  The Social Security Administration ("SSA") denied plaintiff's claim on

July 20, 2016.  <u>See id.</u> at 108.  Plaintiff requested a hearing, <u>see id.</u> at 116, and a

hearing was held before Administrative Law Judge ("ALJ") Jude B. Mulvey.  <u>See id.</u> at

33-50, 67-79.  ALJ Mulvey issued a favorable decision, but the Appeals Council

reviewed and remanded the decision.  <u>See id.</u> at 98-101, 104-106.  On remand, a

hearing was held before ALJ Elizabeth Koennecke on February 18, 2020.  <u>See id.</u> at 52-

65.  On February 28, 2020, the ALJ issued an unfavorable decision.  <u>See id.</u> at 11-19.

The Appeals Council denied plaintiff's request for review on September 28, 2020.  <u>See</u>

<u>id.</u> at 1-6.  Plaintiff commenced this action on November 9, 2020.  <u>See</u> Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.
<u>See</u> Dkt. No. 14.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand
corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

3

independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" <u>Id.</u> § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  <u>See id.</u> § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." <u>Ventura v. Barnhart</u>, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

> significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

## II. Arguments[4]

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

Plaintiff argues that the ALJ's "decision is not based on substantial evidence because the Administrative Law Judge fail[ed] to address [] [p]laintiff's traumatic brain injury [("TBI")] at Step 2 of the sequential evaluation process, thereby tainting the remainder of the process[.]"  Dkt. No. 15 at 4-5.  Specifically, plaintiff contends that the ALJ's "failure to consider the medically determinable impairment of a traumatic brain injury" tainted her Listings and RFC determinations.  Id. at 7-10.  The Commissioner argues that "[p]laintiff's arguments fail for two reasons: (1) the ALJ considered [plaintiff's] testimony, along with record evidence, about what she remained able to do despite her traumatic brain injury; and (2) the ALJ properly relied on the opinion of medical experts who considered the effects of this injury."  Dkt. No. 17 at 5.

### III. Discussion

#### A. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since April 1, 2016, the application date.  See T. at 13.  At step two, the ALJ found that plaintiff's "left-sided hemiplegia" was a severe impairment.  Id.  The ALJ explained that plaintiff's "mild neurocognitive disorder" was not a severe impairment because it caused no "more than minimal limitation[s] in [plaintiff's] ability to perform basis mental work activities[.]"  Id.  "In making this finding," the ALJ reviewed the four areas of mental functioning known as the "paragraph B" criteria.  Id. at 14.  The ALJ determined that plaintiff had mild limitations in understanding, remembering, and applying information, and in

concentrating, persisting, and maintaining pace and no limitations in interacting with others and in adapting or managing oneself.  See id.  "In concluding that [plaintiff] ha[d] no severe mental impairment," the ALJ relied on Jacqueline Santoro, Ph.D.'s consultative examination findings, giving Dr. Santoro's opinion "partial weight[.]"  Id.

Dr. Santoro indicated in plaintiff's background information that she was "in a special education environment for a traumatic brain injury she sustained at age 7."  T. at 593.  As for plaintiff's medical history, Dr. Santoro noted that plaintiff was hospitalized in 2005 for her TBI and her "[c]hronic conditions" are "TBI, left hemiplegia, and seizure history in 2005.  She does not take any medications for any reasons."  Id.  Plaintiff explained to Dr. Santoro that she had "the resource room services where tests are read to her and she gets extended time, she is mildly forgetful and distractable since 2005." Id.  Dr. Santoro determined that plaintiff had no limitations in "following and understanding simple directions and instructions, performing simple tasks, and maintaining a regular schedule.  Mild limitations are in maintaining attention and concentration, learning new tasks, performing complex tasks, making appropriate decisions, relating with others, and dealing with stress."  Id. at 595; see id. 14.  Dr. Santoro explained that "[t]he results of the present evaluation appear to be consistent with cognitive problems, but in and or themselves, they do no appear to be significant enough to interfere with her ability to function on a daily basis."  Id. at 595.  Dr. Santoro diagnosed plaintiff with "[m]ild neurocognitive disorder" and noted that the "[m]edical diagnos[e]s reported by" plaintiff were a "traumatic brain injury[,]" "[l]eft hemiplegia[]" and "[h]istory of seizure back in 2005."  Id. at 595-96.

The ALJ explained that Dr. Santoro's opinion "was rendered after a thorough examination of [plaintiff] by a physician with extensive program and professional expertise, and it appears consistent with the other evidence of record.  The doctor's opinion of no more than mild limitations is supported by her mental status examination findings, including the claimant's ability to count and do simple math with minimal defects in recall."  T. at 14.  The ALJ also recalled that plaintiff "was observed as cooperative with an adequate manner of relating.  Her posture was normal, and her eye contact was appropriate.  Her language skills were adequate.  Her thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia.  Her effort was of full range and appropriate in speech and thought content." Id.  Further, the ALJ recounted that plaintiff told Dr. Santoro that she felt "fine," her mood was euthymic, she was oriented to persona and time, her attention, concentration, and recent and remote memory skills "were only mildly impaired[,]" and "[w]hile her intellectual functioning was below average, her insight and judgment were fair[.]"  Id. at 15.  The ALJ determined that "[t]hese findings [were] consistent with a conclusion that [plaintiff] has no severe mental impairment."  Id.

The ALJ also considered State agency medical consultant C. Walker, M.D.'s[5] initial disability determination.  See T. at 15.  Dr. Walker determined that plaintiff's "[c]erebral trauma[,]" "[o]ther and [u]nspecified [a]rthropathies[,]" and "[o]rganic [m]ental [d]isorders" were severe, medically-determinable impairments.  Id. at 84.  Dr. Walker

---

[5] It is unclear what C. Walker's credentials are, as in whether he is a medical doctor, psychologist, psychiatrist, etc.  On the disability determination form, the name is listed as "C. Walker," which is how the ALJ refers to the individual.  T. at 85; 15.  The Court transcript index does, however, indicate "C. Walker, MD[.]"  Accordingly, the Court will refer to C. Walker as a doctor throughout this Memorandum-Decision & Order.

explained that plaintiff "was hospitalized in 2005 for TBI.  It is believed she was kicked in the head by a horse.  She experienced [loss of consciousness] and depressed skull fracture.  She is in special education for this condition [and] is now in 12th grade."  Id. at 89.  Dr. Walker determined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday or workweek without interruptions from her psychologically-based symptoms.  See id. at 88-89.  Dr. Walker elaborated on the opined limitations in the "[a]dditional [e]xplanation" section of the determination, stating that plaintiff "is able to understand and remember simple and some detailed instructions and work procedures without substantial limitation[,]" "has difficulty carrying out highly complex or technical tasks, but is able to complete simple and some detailed tasks on a consistent basis[,]" "is able to relate and respond in an appropriate manner without substantial limitations[,]" and "exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions."  Id. at 89-90.  Dr. Walker stated that the "[d]ata support[s] the presence of a severe psychiatric impairment that results in more than minimal functional limitations."  Id. at 90.  The ALJ afforded Dr. Walker's opinion "minimal weight[]" because "[i]t was rendered without the benefit of an examination of [plaintiff], and the identified restrictions are not supported by the sum of the evidence, including [plaintiff's] high level of daily activity."  Id. at 15.  Thus, the ALJ concluded that plaintiff had no more than mild limitations in two of the four mental functioning areas.  See id. at 14-15.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See T. at 15.  The

ALJ stated that "[t]he listings for 11.01 require significant and persistent disorganization

of motor function in two extremities resulting in sustained disturbance of gross and

dexterous movements or gait and station or significant interference with speech, vision,

mental function, or daily activities."  Id.  The ALJ concluded that "[n]o such showing has

been made here, as is evidenced by [plaintiff's] high level of daily activity[.]"  Id.

Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)

except "she is limited to one-armed work using the right upper extremity with no

handling or fingering with the left hand, no ladders, ropes, or scaffolds, and only

occasional balancing, kneeling, crouching, or crawling."  T. at 15.  In determining

plaintiff's RFC, the ALJ reviewed plaintiff's subjective complaints and "[t]he objective

evidence of record[,]" and resolved that plaintiff's "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the

medical evidence and other evidence in the record[.]"  Id. at 16.  The ALJ reiterated

plaintiff's testimony from the 2018 hearing before ALJ Mulvey, "that, as a result of a

head injury sustained at age 7, she has paralysis in her left arm and leg.  She has no

feeling in her left hand and cannot grab objects with her left hand alone.  She also steps

on her toes and trips."  Id.; see id. at 72-76.  Further, "[i]n a written report, [plaintiff's]

mother asserted that [plaintiff] requires assistance with any activities requiring two

hands."  Id. at 16; see id. at 321.  The ALJ then reiterated plaintiff's 2020 hearing

testimony that "she volunteered for the Humane Society for one month and was

dismissed because she was unable to fold towels correctly."  Id. at 16; see id. at 56.

The ALJ also explained that plaintiff "testified that she trips and falls every day.  She asserted that she can walk for about 30 minutes before needing to sit because her left leg gets very tired.  She can stand for five minutes before experiencing foot and leg pain[.]"  Id. at 16; see id. at 56-57.

The ALJ reviewed the "objective evidence of record" and concluded that it "fails to support the level of severity alleged by" plaintiff.  T. at 16.  The ALJ noted that plaintiff "has a history of a traumatic brain injury, resulting in left-sided paralysis[]" and "[s]he subsequently experienced limited function in her nondominant left hand."  Id.  The ALJ explained that plaintiff underwent a "series of Botox injections [that] had limited results[.]"  Id. (citing T. at 392).  The ALJ also stated that an examination of plaintiff's "left upper extremity showed normal ranges of motion except in wrist extension, digital range of motion, and limited use of the thumbs and fingers.  [Plaintiff] had difficulty with bilateral tasks, equilibrium, and writing issues[.]"  Id. (citing T. at 576).  The ALJ noted that plaintiff had "also been observed walking with an uneven gait favoring the left leg as a result of the hemiplegia[.]"  Id. (citing T. at 602).

The ALJ recounted Brian Cole M.D.'s physical consultative examination findings and conclusions.  See T. at 16, 588-91.  Dr. Cole noted that plaintiff's chief complaint was a "[t]raumatic brain injury from a horse kicking her head in 2005."  Id. at 588.  Dr. Cole indicated that plaintiff's gait and stance were normal, she could walk on her heels and toes, did not use assistive device, could perform a full squat, needed no help changing for the examination or getting on and off of the exam table, and she was able to rise from a chair without difficulty.  See id. at 589.  Plaintiff had a full range of motion in her spine.  See id. at 590.  Plaintiff did "not have full [range of motion] of her left wrist.

11

She ha[d] a claw hand which she cannot zip, button, and tie." Id. The "[s]trength in [plainitff's] upper extremity in her hand on the left [wa]s 0/5. It [wa]s 5/5 on the right side and the bilateral lower extremities." Id. Plaintiff also had "muscle atrophy in her left hand. Right is normal. No muscle atrophy evident. . . . Hand and finger dexterity intact on the right and diminished on the left. Grip strength 5/5 on the right. She can close her claw hand more so she gets 3/5 strength for that." Id. Dr. Cole diagnosed plaintiff with a "[t]raumatic brain injury after a horse kicking accident, hitting her head[,]" learning disability, "[l]eft side hemiplegia[,]" memory loss, and forgetfulness. Id. at 590-91. Accordingly, Dr. Cole determined that plaintiff had a "[m]arked restriction for heavy lifting and carrying. Marked restriction for activities requiring fine manipulation of her hand." Id. at 591. The ALJ gave Dr. Cole's opinion "significant weight. It was rendered after a thorough examination of the claimant by a physician with extensive program and professional expertise, and it is generally consistent with the sum of the evidence." Id. at 17.

The ALJ also reviewed state agency medical consultant A. Auerbach's opinion. See T. at 17, 86-88, 599. Single decision maker ("SDM") A. White concluded that plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; sit, stand, or walk for six hours in an eight-hour day; was limited to occasional use of her left upper and lower extremities; could occasionally climb, balance, stoop, kneel, crouch, or crawl; was limited to occasionally reaching, handing, and fingering with her left upper extremity; and should "[a]void even moderate exposure" to heights. T. at 86-88. SDM White submitted to Dr. Auerbach an electronic request for medical advice wherein SDM White stated that plaintiff "allege[d] a disability due to TBI. [Plaintiff]

12

sustained a TBI injury from a horse kicking her in the head in 2005.  She has left wrist

and ankle dysfunction and uses braces for both." Id. at 599.  Further, SDM White stated

that plaintiff "is limited in her [activities of daily living] and is only able to use right hand

to lift.  She has left foot drop.  She has limited [range of motion] of left wrist and claw

hand.  Strength in left [is] 0/5." Id.  Dr. Auerbach responded, stating that

> [t]he primary limitations are related to the left upper extremity.
> Longitudinal medical evidence demonstrates that she is able to use the
> left hand for assist purposes.  There appeared to be no significant gait
> abnormalities.  [Plaintiff] is essentially limited to one armed work lifting
> twenty pounds occasionally with the right, stand/walk 6/8 hours and sit 6/8
> hours.  She would have difficulty climbing ladders and scaffolds, and
> would be limited to occasional crawling.

Id.  The ALJ cited to the electronic request for medical advice when reiterating Dr.

Auerbach's opinion and gave it "significant weight.  It is from a medical source who

reviewed the entirety of the available evidence and identified limitations that are

supported by the medical evidence.  The limitations are also consistent with the

assessment of the consultative examiner[.]"  Id. at 17.

    The ALJ also gave "[s]ignificant weight" "to the opinion in a student exit summary

concluding that [plaintiff] has difficulty with bilateral tasks, equilibrium, and writing

issues, because it is well-explained, supported by the medical evidence, and consistent

with the medical opinions in the record." T. at 17.  The ALJ explained that "[t]he report

noted limited left wrist extension and digital range of motion and limited left thumb and

finger use in support of the limitations identified[.]"  Id. (citing T. at 576).

    Finally, the ALJ reviewed plaintiff's activities of daily living. See T. at 17.  The

ALJ explained that plaintiff "described daily activities that are not limited to the extent

one would expect, given the complaints of disabling symptoms and limitations."  Id.  The

ALJ stated that plaintiff "admitted that she can dress, bathe, and groom herself.  She can [clean] and manage her finances.  Her mother does the cooking, food preparation, laundry, and shopping.  Nonetheless, [plaintiff] has a driver's permit[,]" "has friends outside of school who she sees 'a lot[,]'" "[s]he spends her days going to school and taking care of her pets, and her hobbies and interests include horseback riding[.]"  Id. (citing T. at 595).  The ALJ also recounted plaintiff testimony that "she continues to ride horses in the summer and that she does not require any adaptive equipment to do so[.]  She also testified that she cares for her horses, dogs, and fish.  She does chores in the barn, using her right arm only[.]"  Id.; see T. at 57, 73-74.  The ALJ concluded that "[t]hese activities require many of the same functions that [plaintiff] alleges she is unable to perform in a work setting."  Id. at 17.

At step four, the ALJ determined that plaintiff had no relevant past work.  See T. at 18.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 18-19.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since April 1, 2016, the date the application was filed[.]"  Id. at 19.

### B. Analysis

#### 1. Severity Determination

The ALJ is required to "consider all of [a plaintiff's] medically determinable impairments of which [he or she is] aware, including [the] medically determinable impairments that are not 'severe[.]'"  20 C.F.R. § 416.945(a)(2).  To qualify as a medically-determinable impairment, it "must result from anatomical, physiological, or

psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 416.921.  Whether something is considered a medically-determinable impairment is influential to the remainder of the decision because "only medical determinable impairments can be considered severe or non-severe, [and] only limitations stemming from severe and non-severe impairments are considered in formulating an RFC."  Talbot v. Colvin, No. 3:13-CV-1249 (GTS), 2015 WL 5512039, at *6 (N.D.N.Y. Sept. 15, 2015).

The ALJ then must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental abilities to perform basic work activities.  See 20 C.F.R. § 416.922(a).  Basic work activities include walking; standing; sitting; lifting; carrying; pushing; pulling; reaching; handling; seeing; hearing; speaking; understanding, remembering, and carrying out simple instructions; using judgment; and responding appropriately to supervisors, co-workers, and usual work situations.  See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012); see also 20 C.F.R. § 416.922(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to screen[ing] out de minimis claims, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  Id. (alterations in original) (internal citations and quotation marks omitted).  The failure to find an impairment severe is generally harmless "where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ

provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe." Takeylyn G. v. Saul, No. 1:18-CV-292 (ATB), 2019 WL 3369266, at *4 (N.D.N.Y. July 26, 2019).  However, this harmless error analysis does not ordinarily apply to an ALJ's failure to find a condition to be a medically-determinable impairment.  See John B. v. Kijakazi, No. 1:20-CV-1310 (ATB), 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) ("Where an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate.") (collecting cases explaining the same).

At step 2 of her analysis, the ALJ did not explicitly mention plaintiff's "traumatic brain injury[,]" but instead found plaintiff's "left-sided hemiplegia" to be a severe impairment and her "mild neurocognitive disorder" to be a non-severe impairment.  T. at 13.  Dr. Santoro diagnosed plaintiff with a "[m]ild neurocognitive disorder[]" and explained that plaintiff reported her medical diagnosis as a "[t]raumatic brain injury[]" and "[l]eft hemiplegia." Id. at 595-96.  Additionally, Dr. Walker noted that plaintiff was "hospitalized in 2005 for TBI"; Dr. Cole diagnosed plaintiff for a traumatic brain injury, left hemiplegia, learning disability, and memory loss and forgetfulness; and SDM White wrote to Dr. Auerbach explaining that plaintiff alleged disability due to her TBI.  See T. at 89, 590, 599.  Therefore, as plaintiff states, every medical opinion that the ALJ relied on reiterated that plaintiff suffered from a TBI and it impacted her ability to function.  See Dkt. No. 15 at 9.  Moreover, the only medical condition that plaintiff listed in her application for benefits was her TBI.  See T. at 282.

Plaintiff states that her TBI "resulted in long-term significant left sided hemiplegia (paralysis of one side of the body) and cognitive deficits." Dkt. No. 15 at 5. The ALJ reviewed (1) each medical opinion referencing, and reciting limitations stemming from, plaintiff's TBI, (2) the 2018 hearing testimony that extensively discussed plaintiff's TBI, and (3) plaintiff's resulting diagnoses of left-sided hemiplegia and mild neurocognitive disorder. See id. at 11-17. It is unclear to the Court how the ALJ's thorough review and discussion of this evidence concerning the diagnoses and limitations stemming from plaintiff's TBI, does not inherently consider plaintiff's TBI. Compare Showers v. Colvin, No. 3:13-CV-1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) ("Since [the ALJ] found that [the plaintiff's] claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent steps or when formulating [the plaintiff's] residual functional capacity.").

Although it would have been helpful for the ALJ to state that plaintiff's TBI was a medically-determinable impairment, it is axiomatic where she found plaintiff's left-sided hemiplegia and neurocognitive disorder to be medically-determinable impairments which resulted from her TBI and exhibit the exact limitations and symptoms plaintiff alleges. See Dkt. No. 15 at 6; compare John B., 2022 WL 813829, at *5 (explaining that the ALJ erred in not considering the plaintiff's chronic kidney disease ("CKD") as a medically-determinable impairment because the "[p]laintiff's CKD was entirely absent from the limited discussion. [] Furthermore, despite the ALJ's extremely in-depth analysis of [the] plaintiff's medical treatment history, there is no meaningful reference to [the] plaintiff's CKD throughout the lengthy decision."). The Court, therefore, finds no

error in the ALJ's decision at this stage of the sequential evaluation.  Regardless, any error is harmless because stating that plaintiff's TBI was a medically-determinable impairment would not have changed the ALJ's analysis at any of the subsequent steps as she considered all of plaintiff's limitations and symptoms stemming from her injury. Compare Childs v. Colvin, No. 1:14-CV-462, 2016 WL 1127801, at *3-4 (W.D.N.Y. Mar. 23, 2016) (explaining that ALJ's failure to find that the plaintiff's schizoaffective disorder was a medically-determinable impairment "constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application.").

As to the ALJ's severity analysis, plaintiff "bears the burden of proving . . . her case at step[]" two.  Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), as amended on reh'g in part, 416 F.3d 101 (2d Cir. 2005).  Plaintiff does not explain how her TBI is a severe impairment but summarily "contends that" the ALJ's failure to find it to be severe "require[es] remand."  Dkt. No. 15 at 6-7.  This is insufficient to meet her burden of proof.  See Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (citation and internal quotation marks omitted) ("[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition severe.").  The ALJ thoroughly reviewed plaintiff's left-sided hemiplegia and neurocognitive disorder and the related limitations. See T. at 13-17.  As plaintiff has not identified any severe limitation that the ALJ failed to consider, the Court finds no error in her step two determination that plaintiff's left-sided hemiplegia was a severe impairment but her mild neurocognitive disorder was not.  See id. at 13-14.

18

Nevertheless, even if the ALJ erred by not finding her "traumatic brain injury" to be a severe impairment, the ALJ's error would be harmless because she continued on in the sequential evaluation and expressly considered plaintiff's TBI in the RFC determination.  T. at 16; see Corey S. v. Comm'r of Soc. Sec., No. 8:20-CV-1112 (ML), 2022 WL 833567, at *7 (N.D.N.Y. Mar. 21, 2022) ("Of course, it is well settled that failure to find an impairment severe at step two is harmless error if the ALJ incorporates those impairments in the later steps of the sequential analysis.").

### 2. Listings Determination

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, [the p]laintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing."  Id.; see 20 C.F.R. § 416.925(d).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)) (additional citation omitted).  "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence." Andrea K. v. Comm'r of Soc. Sec., No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted).

Plaintiff argues that the ALJ erred by not considering Listing 11.18 for a TBI.  See Dkt. No. 15 at 8.  The ALJ explicitly considered "[t]he listings for 11.01" which "require significant and persistent disorganization of motor function in two extremities resulting in

sustained disturbance of gross and dexterous movements or gait and station or significant interference with speech, vision, mental function, or daily activities." T. at 15. Listing 11.18 is a subsection of Listing "11.01 Category of Impairments, Neurological Disorders[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Listing 11.08 requires, in part, a showing that the plaintiff has "[d]isorganization of motor function in two extremities [], resulting in an extreme limitation [] in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury[.]" Id. Therefore, to the extent plaintiff argues that the ALJ did "not provide any analysis of th[e] listing," the Court disagrees insofar as the ALJ determined that plaintiff did not show "significant and persistent disorganization of motor function in two extremities . . . ." Dkt. No. 15 at 8; T. at 15; see Gabriel C. v. Comm'r of Soc. Sec., No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *9 (N.D.N.Y. Sept. 18, 2019) (explaining that "any error the ALJ committed by not explicitly discussing listings 12.08 . . . and 12.11 . . . was harmless . . . [because t]hose listings have the same paragraph B requirements as listings 12.04, 12.06, and 12.10" which the ALJ did expressly discussed).

Listing 11.18 can also be met by a showing that the plaintiff has a "[m]arked limitation [] in physical functioning [], and in one of the [four] areas of mental functioning, persisting for at least 3 consecutive months after the injury." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff contends that "evidence exists that she may meet" that criteria. Dkt. No. 15 at 8. Specifically, plaintiff states that "Dr. Cole opined within his report that the [p]laintiff had marked physical restrictions. . . . Although the psychiatric opinion rendered by C. Walker opines moderate limitations in her mental functioning . . .,

[plaintiff's] functional report . . . and psychological testing for her [individualized education program] . . . suggests that she maybe more limited." Id.  The ALJ afforded Dr. Cole's opinion, which found marked physical restrictions, "significant weight[.]"  T. at 17.  However, the ALJ determined that plaintiff had no more than mild limitations in two of the four areas of mental functioning and thoroughly explained her reasoning.  See id. at 14.  The ALJ relied on Dr. Santoro's consultative examination and state agency consultant Dr. Walker's determination.  See id. at 14-15.  Therefore, although the ALJ did not explicitly discuss Listing 11.18, any error is harmless because she reviewed the relevant paragraph B requirements.  See Gabriel C., 2019 WL 4466983, at *9. Plaintiff's contention that her function report and school's individualized education program testing "suggests" greater limitations is insufficient to prove that she meets the criteria for Listing 11.18.  Dkt. No. 15 at 8.  This is particularly true where the ALJ discussed and weighed plaintiff's function report as well as her school's student exit summary—explaining plaintiff's level of functioning following her participation in her individualized education program—in making her RFC determination.  See T. at 16-17, 320-27, 575-87.  As the ALJ reviewed the factors relevant to Listing 11.18 and plaintiff has not otherwise demonstrated that she meets the criteria, remand is not warranted on this ground.  See Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *6 (N.D.N.Y. Mar. 17, 2022) ("Even if [the p]laintiff's PTSD were a medically determinable impairment and required a listing analysis, she fails to meet listing 12.15 since the record evidence supports the ALJ's findings that her other conditions did not meet the requirements for listings 12.04 and 12.06, which contain identical paragraph B and C criteria to listing 12.15.").

### 3. RFC Determination

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations. . . .   Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville, 198 F.3d at 52 (citation omitted)).   "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545(a)).   "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"   Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)).   "Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence" and the consistency of the plaintiff's subjective allegations of pain, intensity, and limiting effects of his or her symptoms.   Dumas v. Comm'r of Soc. Sec., No. 7:13-CV-1099 (GTS/TWD), 2015 WL 1403342, at *13 (N.D.N.Y. Mar. 26, 2015).

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.   At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir.

2011) (citing omitted); see 20 C.F.R. § 416.929; SSR 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *1-2 (Oct, 25, 2017).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (citation omitted); see 20 C.F.R § 416.929(a).

"While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence."  Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *10 (N.D.N.Y. June 9, 2021).  The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Genier, 606 F.3d at 49 (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).  The ALJ must "clearly demonstrate[] [that] he considered the entire case record . . . as required by SSR 16-3p."  Kearney v. Berryhill, No. 1:16-CV-00652-MAT, 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) ("The ALJ provided significant detail regarding the basis of this finding, noting there is little objective evidence of record to support the alleged severity of the symptoms [the] [p]laintiff described at the hearing."); see, e.g., Michael H., 2021 WL 2358257, at *11 (affirming the ALJ's determination where the ALJ "examine[d] inconsistencies in the record" between the plaintiff's testimony and the medical records and opinions).

"For claims filed before March 27, 2017, the ALJ's decision must account for the 'treating physician rule': If the record contains a treating physician's opinion about the

nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the administrative record, that opinion is entitled to controlling weight, or something less." Schillo v. Comm'r. of Soc Sec., __F.4th__2022 WL 1020381, at *1 (2d Cir. Apr. 6, 2022).  "Under the Regulations, a treating [source's medical] opinion is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record.'" Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).  "[A]n ALJ is entitled to rely upon the opinions of both examining and nonexamining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).  "The opinions of consultative examiners . . . may constitute substantial evidence where[] . . . [they are] supported by the medical evidence in the record." Frawley v. Colvin, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014).  "The ALJ [i]s not required to mention or discuss every single piece of evidence in the record." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005); see Mongeur, 722 F.2d at 1040; Berry, 675 F.2d at 469.  "Where the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he [or she] considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Id. at 79 (citations and internal quotation marks omitted).

Plaintiff asserts that she "is easily distracted, ha[s] trouble focusing, has forgetfulness, and a need for structure." Dkt. No. 15 at 9.  Plaintiff contends that the ALJ "did not address these allegations, rather she focuses on the physical aspects of

her testimony and only notes that [] [p]laintiff has a history of a traumatic brain injury that resulted in left-sided paralysis, ignoring the mental component of the impairment." Id. As plaintiff explains, in the consistency analysis, the ALJ did not expressly discuss plaintiff's mental limitations, but only her physical limitations. See id. at 16-17. However, spanning over two pages of the ALJ's nine-page decision, she reviewed plaintiff's mental limitations and determined that she was no more than mildly limited. See id. at 13-15.  Specifically, as it relates to plaintiff's alleged inability to focus, remember, and maintain structure, the ALJ found plaintiff to have mild limitations in understanding, remembering or applying information, and concentrating, persisting or maintaining pace.  See id. at 14.  The ALJ was not required to restate this determination later in her decision; therefore, even though it was not discussed as part of the consistency analysis of her RFC determination, the ALJ sufficiently addressed the issue.  See Candy A. O. v. Kijakazi, No. 5:20-CV-0766 (DEP), 2022 WL 226804, at *5 (N.D.N.Y. Jan. 26, 2022) ("Even though the ALJ did not specifically discuss pieces of evidence in the paragraph related to [a treating source's] opinion, [the p]laintiff ignores the fact that the ALJ discussed the objective medical and other evidence in detail throughout the decision and made clear that he considered all of the available evidence. Such discussion is relevant to assessing the ALJ's later conclusion about the supportability and consistency of [the] opinion because the ALJ's decision must be read as a whole.").  Plaintiff does not otherwise explain how the ALJ erred in evaluating plaintiff's subjective complaints with the objective evidence of record.  See 20 C.F.R. § 416.929.

Plaintiff further contends that the ALJ's RFC determination is flawed because her failure to consider plaintiff's TBI at step two, "taint[ed] the weighing of the various medical opinions of record."  Dkt. No. 15 at 9.  Specifically, plaintiff asserts that (1) "both psychiatric physicians who rendered opinions opined that there were deficits in attention/concentration and carrying out complex tasks[,]" (2) "Dr. Sant[o]ro's examination revealed deficits in memory and recall, which support the opinion of C. Walker that [] [p]laintiff has moderate limitations in in this area[,]" and (3) "[e]ach of the [] opinions note [] [p]laintiff's traumatic brain injury as a diagnosis and resulting basis of the opinion."  Id.  Plaintiff does not assert that the ALJ gave too much or too little weight to any opinion, or that the treating physician was traversed.  See generally Dkt. No. 15.  Rather, she claims that "despite" each medical opinion mentioning plaintiff's TBI, the ALJ did not "comment on the traumatic brain injury at Step 2 as a medically determinable impairment and places no mental restrictions within the residual functional capacity finding at Step 4."  Id. at 9-10.  Plaintiff is seemingly repeating her step two argument and attempting to cast it in a different light under the ALJ's duty to properly weigh the medical opinions.  Cf. Dahn v. Comm'r of Soc. Sec., No. 18-CV-1507 (HBS), 2020 WL 5554510, at *4 (W.D.N.Y. Sept. 17, 2020) (explaining that the plaintiff "develops no reasoned argument to demonstrate that the ALJ's view . . . was inaccurate or erroneous.  At most, [the plaintiff] contends that different inferences could be drawn from the medical record.  That is insufficient to demonstrate that the ALJ erred.").

To the extent plaintiff is arguing that the ALJ should have found her mental impairments to be severe because of Dr. Walker's moderate limitation findings and the various opinions mentioning plaintiff's TBI, the ALJ considered all of the evidence and

determined otherwise.  See Dkt. No. 15 at 9-10.  The ALJ thoroughly reviewed the

mental health assessments and determined that plaintiff had mild limitations in two of

the four mental functioning areas.  See T. at 14-15.  Although Dr. Walker determined

that plaintiff was moderately limited in some areas of functioning, the ALJ concluded

that the opinion should be afforded "minimal weight" because "[i]t was rendered without

the benefit of an examination of the claimant, and the identified restrictions are not

supported by the sum of the evidence, including the claimant high level of daily

activity[.]"  Id. at 15; see id. at 88-89.  The Court must defer to the ALJ's resolution of

conflicting evidence, and it will not reweigh the evidence.  See Terri G. v. Comm'r of

Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019)

(internal citations omitted) ("[I]t [i]s within the ALJ's purview to resolve material conflicts

in the evidence and various opinions of record. . . . This Court will not now reweigh the

evidence that was before the ALJ.").  Further, the ALJ's decision is supported by

substantial evidence because the Court "can fairly glean from the ALJ's decision that

[s]he considered [plaintiff's] traumatic brain injury."  Pochepan v. Comm'r of Soc. Sec.,

No. 18-CV-857 (FPG), 2019 WL 5682831, at *3 (W.D.N.Y. Nov. 1, 2019).[6]  The ALJ

stated that plaintiff had a history of a TBI, reviewed the limitations associated with

plaintiff's left hemiplegia and neurocognitive disorders which resulted from her TBI, and

explicitly relied on the medical opinions that each referenced plaintiff's TBI.  See T. at

---

[6] "[T]he ALJ reasonably viewed [the plaintiff's TBI] as a cause of her mental impairments, not as its own distinct impairment.  This aligns with [the consultative examiner's] conclusion that [the plaintiff] had a pre-existing mental disorder that was exacerbated by drug use and traumatic brain injury. . . . The ALJ also cited treatment notes showing that [the plaintiff's] mood and behavior issues stemmed in part from her traumatic brain injury. . . .  Therefore, the ALJ committed no error when he did not separately analyze the functional limitations that [the plaintiff's] traumatic brain injury caused, as any such limitations were already subsumed in his analysis of the limitations posed by her mental impairments."  Pochepan v. Comm'r of Soc. Sec., No. 18-CV-857 (FPG), 2019 WL 5682831, at *3 (W.D.N.Y. Nov. 1, 2019).

13-17.  Plaintiff has not identified any portion of the record indicating that she is more severely limited than the ALJ determined.  See generally Dkt. No. 15.  As the ALJ's consideration of plaintiff's TBI is apparent, and the RFC is supported by substantial evidence remand is not warranted on this ground.

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 13, 2022
        Albany, New York


Christian F. Hummel
U.S. Magistrate Judge